**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHNNY LUCES,

      Plaintiff,

v.                                                                    No. 1:21-cv-0268-KWR-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION DENYING PLAINTIFF'S MOTION FOR REMAND AND AFFIRMING THE COMMISSIONER'S DISABILITY DECISION

Before me is Plaintiff Johnny Luces' Motion to Reverse and Remand and Memorandum in Support. [Docs. 27, 28]. United States District Judge Kea Riggs referred this case to me for analysis and a recommended disposition on Plaintiff's challenge to the Commissioner's final decision denying Johnny Luces' applications for child's insurance benefits based on disability and for protective Title XVI supplemental security income. [Doc. 23]; *see* [Doc. 28]. Having reviewed the parties' briefing and the Administrative Record, the I find that Plaintiff's arguments do not warrant remand and thus recommend the Court **DENY** Plaintiff's Motion and **AFFIRM** the Commissioner's final decision denying benefits under the Social Security Act.

## I.   INTRODUCTION

In his appeal from the Social Security Administration's final decision denying benefits, Plaintiff argues three issues. First, Plaintiff asserts that the Administrative Law Judge ("ALJ") failed to perform the required examination under Social Security Ruling ("SSR") 06-3p and *Haddock* involving vocational limits not contained in the Dictionary of Occupational Titles

1

("DOT"). *See* [Doc. 28]. Second, he contends that the vocational expert's testimony that no conflict existed between the residual functional capacity  and the DOT is incorrect. *Id.* Finally, Plaintiff urges that the DOT descriptions of the jobs which the vocational expert identified as available to Plaintiff considering his residual functional capacity do not address the social limitations posed in the ALJ's hypothetical and therefore sufficient employment in the national economy may not exist. *Id.*

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff applied for child's insurance benefits based on disability and protectively for supplemental security income in November 2018, originally claiming disability beginning June 22, 2016. Doc. [18-1] at 14.[1] Plaintiff later amended the alleged onset date to the day he turned eighteen years old, September 4, 2018. *Id.* Plaintiff alleges that he cannot work because of post-traumatic stress disorder, obsessive compulsive disorder, severe depression, anxiety, and schizophrenia. *Id.* at 86. The Administration denied Plaintiff's applications initially on January 28, 2019, and again upon reconsideration on August 27, 2019. *Id.* at 82-85, 108-111. Plaintiff was granted a hearing before ALJ James Stewart, held on September 24, 2020. *Id.* at 45.

Various sources gave inconsistent opinions on Plaintiff's alleged disabilities. Plaintiff wrote in a function report that he hears voices which prevent him from being able to focus for more than five minutes, do routine tasks like personal care, and go out alone. *Id.* at 21. However, he also stated that he attended community college, took a driving course, went shopping, cooked basic meals, and did basic chores at home. *Id.*  at 21-22.

---

[1] Document 18 comprises the sealed Certified Transcript of the Administrative Record.  I cite the CM/ECF document number and page rather than the Record's internal pagination.

Per his mother, Plaintiff cannot be alone because of social anxiety and psychotic disorders, which prevent him from getting a job (he has applied but never received an interview), earning a high school diploma, and generally becoming part of society. *Id.* at 20. She asserted that Plaintiff could not complete the function report forms on his own because of his very limited concentration. *Id.* at 21. She also reported that Plaintiff attended community college and worked on his GED after leaving high school because of social anxiety and hallucinations (the school provided him an IEP). *Id.* She stated that he is happier at community college because he is no longer bullied. *Id.* at 255. However, she noted that he struggles daily from medication side effects, voices/hallucinations, and poor concentration. *Id.*

Treatment records reflect depression, anxiety, panic disorder, paranoia, and impaired attention and concentration. *Id.* at 22. However, they do not demonstrate hallucinations, and in fact Plaintiff consistently denied delusions. *Id.* He does show consistent anxiety. *Id.* at 24. Plaintiff regularly attended therapy and medication management, where his consistent anxiety was noted. *Id.* at 23-24. In a letter, Plaintiff's therapist wrote that Plaintiff's auditory hallucinations made him unable to work. *Id.* at 24. However, the therapist's second letter a few months later reported improved anxiety and hallucination management, although schizoaffective disorder still prevented Plaintiff from working or finishing his GED. *Id.* at 25. Medication management records, however, showed that Plaintiff greatly benefitted from medications which stabilized mood and allowed him to progress with his GED. *Id.* at 25, 27. Although the therapist opined that Plaintiff could not work, the state agency psychologist found that Plaintiff is limited to unskilled work based on records at the time, showing a fuller picture of Plaintiff's abilities. *Id.* at 26-27.

ALJ James Stewart issued an unfavorable decision denying benefits on October 29, 2020. *See id.* at 14-30. Plaintiffs petitioned the Appeals Council for review, which was denied on February 26, 2021. *Id.* at 5. This made the ALJ's decision the Commissioner's final decision.[2] Plaintiff timely sued the Acting Commissioner in federal court on December 20, 2021. [Doc. 27]. The Commissioner responded on March 24, 2022 [Doc. 32], and Plaintiff replied on April 1, 2022 [Doc. 33].

## III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration must apply a five-step analysis[3] to determine eligibility for benefits. § 404.1520(a)(4).[4]

A claimant is entitled to child's benefits based on the earnings of an insured person who receives disability or old-age benefits. § 404.350(a).   In relevant part, a claimant may apply for child's benefits if the claimant is eighteen years old and has a disability that began before twenty-two years old. § 404.350(a)(5). The same five-step analysis applies to this type of application for

---

[2] Claimants who are denied benefits must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  See 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  20 C.F.R. § 422.210(a); see also *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

[3] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

[4] Regulations for determining whether a claimant is disabled for purposes of for both DIB and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs DIB while Part 416 governs SSI.  I cite only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

4

child's insurance benefits based on disability. 20 C.F.R. § 404.1520(a)(2); *see also Alexandre v. Astrue*, No. 11-CV-0384 JB/SMV, 2013 WL 12315084, at *1 (D.N.M. Jan. 23, 2013), *report and recommendation adopted*, No. CIV 11-0384 JB/SMV, 2013 WL 1010439 (D.N.M. Feb. 27, 2013); *Leo v. Saul*, No. 1:18-CV-00977-LF, 2020 WL 888600, at *2, n.6 (D.N.M. Feb. 24, 2020) (citing *Madrick v. Colvin*, 200 F. Supp. 3d 1211, 1212 (D. Kan. 2016)) ("To be eligible for adult disabled child benefits based on the earnings record of an insured parent, the claimant must be over the age of 18, unmarried, and found disabled before her twenty-second birthday")).

At step one[5] of the sequential analysis, the ALJ found that Plaintiff had not reached age twenty-two as of September 4, 2018, the amended alleged onset date.[6] [Doc. 18-1] at 17.  He also found that Plaintiff had not engaged in substantial gainful activity since September 4, 2018. *Id.* At step two, the ALJ found that Plaintiff had six severe impairments: intrinsic atopic dermatitis, schizoaffective disorder, depressive disorder, anxiety disorder, panic disorder without agoraphobia, and post-traumatic stress disorder. *Id.* At step three, he found that Plaintiff's impairments, individually and in combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P.  *Id.*

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  Residual functional capacity ("RFC") is a multidimensional description of the work-related abilities a claimant retains despite

---

[5] I note that the ALJ's Findings and Conclusions section includes more numbered heading than the five-step analysis findings because of his adult disabled child findings. *See* [Doc. 18-1] at 17-28. However, for the sake of clarity I will only outline the five-step findings.
[6] Plaintiff amended his alleged onset date to the date of his eighteenth birthday, September 4, 2018, during the hearing. [Doc. 18-1] at 54-55. The ALJ originally raised the issue of Plaintiff having turned eighteen years old and recessed the hearing to allow Plaintiff to confer with his attorney regarding amending the onset date. *Id.* at 55. Plaintiff agreed to amend the onset date to September 4, 2018. *Id.* Neither party objected to amending the onset date during the hearing or briefing.

his impairments. 20 C.F.R. § 404.1545(a)(1).  It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  SSR 96-8p at *Definition of RFC*. The ALJ determined that Plaintiff could perform medium work with the follow limitations:

> Due to mental impairments, the claimant is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember and carry out simple instructions. The claimant can maintain concentration and persist for 2-hour periods during the workday, with normally scheduled work breaks between periods. The claimant can relate to supervisors and coworkers on a superficial and work related basis, and can adapt to a work situation. The claimant should not work at jobs where changes in work routine occur on a regular basis, or where changes in routine are regularly made under circumstances where there is usually little or no notice or opportunity to adjust. The claimant can have no contact with the general public (meaning interaction with the general public is not part of the job duties, and any contact would in most cases be incidental and superficial.

*Id.* at 20. The ALJ reached these conclusions after considering all of Plaintiff's symptoms and the consistency of those symptoms with all record evidence, medical and otherwise, as required by 20 C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p. *Id.*

Among other evidence, the ALJ discussed Plaintiff's reports of his symptoms and the degree to which he alleges they impinge on his lifestyle, along with his mother's accounts of Plaintiff's conditions and their effect. The ALJ found that Plaintiff's and his mother's narratives of his symptoms were inconsistent with each other in their intensity, persistence, and limiting effects, and inconsistent with the other evidence (including medical) in the record. *Id.* at 21, 24. He also found that Plaintiff's treatment records, including medical management records, were "substantially inconsistent" with Plaintiff's mother's testimony and alleged severe psychotic symptoms. *Id.* at 22, 25. The ALJ also considered Plaintiff's recent progress with his GED, years-long relationship, life goals, and desire to live and work on his own. *Id.* at 26.  Based on his analysis, the ALJ found that Plaintiff's symptoms were unlikely to reduce his work capacity to less

than medium work and noted that the RFC integrates mental limitations for concentration and routine changes. *Id.* at 22, 27-28.

At step four, the ALJ found that Plaintiff had no past relevant work and thus job skills transferability was moot. *Id.* at 28. at 28. At step five, he found that Plaintiff was not disabled because he could perform the jobs of dishwasher, hand packager, and laundry worker given a medium unskilled work RFC with mental limitations. *Id.* at 29. The ALJ relied on the hearing testimony of vocational expert Lisa Cox who stated that these positions, as actually and generally performed, require only medium exertion and could be performed by someone with Plaintiff's limitations. *Id.* at 29, 45. Based on that testimony, the ALJ concluded that Plaintiff could work in jobs existing in significant numbers in the national economy and had not been under a disability from September 4, 2018, through the date of decision. *Id.* at 29.

## IV.   **STANDARD OF REVIEW**

I "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## V.   **PARTIES' ARGUMENTS**

a.  <u>Plaintiff's first argues that the ALJ failed to perform the SSR 06-3p and Haddock examinations regarding vocational limits not contained in the DOT.</u>

Plaintiff first argues that the vocational expert's testimony cannot be accepted as substantial evidence. [Doc. 28] at 4. Plaintiff implies that the expert lacked foundation for her testimony. *Id* at 4-5. Plaintiff asserts that it is a mistake for a court to find that "anything an expert says will meet the agency's burden of proof." *Id.* at 4 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1162 (2019) (Gorsuch, J., dissenting)). This appears to be Plaintiff's challenge to acceptance of the vocational expert's testimony that the RFC does not conflict with the DOT's job definitions, yet Plaintiff provides no supporting factual analysis.

The Commissioner responds that the vocational expert testimony constitutes substantial evidence to support the decision. [Doc. 32] at 5. The Commissioner distinguishes Plaintiff's authority and observes that Plaintiff did not question the vocational expert after she responded to the ALJ's hypothetical, nor did Plaintiff request the data underlying her opinion. *Id.* at 6. Therefore, the ALJ's hypothetical was consistent with the entire RFC and the expert testimony was substantial evidence. *Id.*

b.  <u>Plaintiff next argues that the vocational expert incorrectly testified that no conflict existed between the vocational limits and DOT.</u>

Plaintiff asserts that the vocational expert's response to the ALJ's hypothetical regarding jobs Plaintiff could perform with his mental limitations contained an inconsistency or conflict which the ALJ failed to address. *Id.* at 5-6. Plaintiff contends that the DOT job description's silence on Plaintiff's specific limitations creates a material conflict between them. *Id.* at 6. The ALJ therefore must ask about the conflict and explain how he resolved it before relying on the

vocational expert testimony. *Id.* at 8-9. Plaintiff argues that the ALJ omitted this inquiry and then "impermissibly [and] unreservedly" relied on the [expert]'s testimony." *Id.* at 9.

The Commissioner responds that the ALJ properly asked, and the expert confirmed, that vocational experts must testify about any conflicts between their opinions and the DOT job descriptions. *Id.* at 7. The Commissioner notes that the expert identified three jobs suited to Plaintiff's unique limitations in response to the ALJ's hypothetical including all RFC limitations, including mental. *Id.* The Commissioner also narrates the discussion of the ALJ's second hypothetical proposing disabling mental limitations (which differ from the RFC). *Id.* The vocational expert testified that there were no jobs in the national economy under the new hypothetical because additional limitations "were outside the scope of the DOT." *Id.* The ALJ then clarified, and the vocational expert confirmed, "Not inconsistent, just outside the scope, is that correct?" *Id.* In response to the ALJ, the vocational expert replied that none of the rest of her testimony was inconsistent with, in conflict with, nor outside the scope of the DOT: "Correct, just the limitations." *Id.* The Commissioner summarizes that the ALJ then reasonably determined that the vocational expert's testimony and the DOT were consistent. *Id.*

The Commissioner further argues that Plaintiff's disagreement with the vocational expert's statement that the second hypothetical's limitations were "outside the scope" is misplaced. *Id.* at 8. The Commissioner redirects the focus to the ALJ asking the vocational expert about conflicts with the DOT and relying on the vocational expert's testimony that no conflicts existed which would render her testimony inconsistent with the DOT. *Id.* Finally, the Commissioner contends that Plaintiff fails to explain how the DOT does not address the RFC limitations. *Id.*

c. <u>Plaintiff argues that the DOT job descriptions of the jobs the vocational expert identified do not address the social limitations in the ALJ's hypothetical to the expert.</u>

Plaintiff argues that the vocational expert's identification of "dishwasher" as a viable job, instead of the proper DOT term "kitchen helper," creates an inconsistency the ALJ failed to resolve. [Doc. 28] at 9. Plaintiff also contends that the reasoning, math, and language skills required for the vocational expert's identified jobs do not address Plaintiff's mental limitations. *Id.* at 10-11. Finally, he speculates that had the vocational expert properly considered Plaintiff's mental limitations, the number of jobs in the national economy available to Plaintiff would be less than the number the expert provided at the hearing. *Id.* at 12.

The Commissioner responds that this argument should be rejected because it "depends on the same flawed allegations of error" the Commissioner previously addressed. [Doc. 32] at 11.

## VI.  <u>ISSUES PRESENTED</u>

a. Whether an apparent conflict or inconsistency exists between the DOT job titles and the vocational expert's testimony that Plaintiff could work as a dishwasher, a hand packager, and a laundry sorter in the national economy, which the ALJ failed to resolve such that the vocational expert's testimony does not constitute substantial evidence supporting the Commissioner's non-disability finding, even though the ALJ's hypothetical to the vocational expert included all mental limitations incorporated into the RFC and the DOT job descriptions do not incorporate the limited mental abilities?

b. Whether sufficient jobs for Plaintiff exist in the national economy where the vocational expert identified "dishwasher" instead of "kitchen helper," and in light

10

of the jobs requiring low level educational abilities, despite the vocational expert

considering the mental limitations posed in the hypothetical?

**VII.   <u>ANALYSIS</u>**

> a.  <u>I will not address Plaintiff's undeveloped and repetitive argument that the ALJ failed to perform the required SSR 06-3p and *Haddock* examinations.</u>

An argument must be sufficiently developed to allow for judicial review. *Leo*, 2020 WL

888600, at *7. Failure to adequately brief an issue renders the court unable to properly consider it.

*Id.* (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)) (noting that Plaintiff

failed to show any evidence suggesting that she would be off task or could be around coworkers

and explain how these facts rendered the vocational expert testimony unreliable).

Under the first point of error, Plaintiff only provides legal citations and conclusions. *See*

[Doc. 28] at 4-5. Plaintiff fails to cite to the record or otherwise integrate the facts of this case into

the legal statements. *Id.* The lack of adequate briefing tailored to the instant case renders me unable

to review this argument. I also note that Plaintiff incorporates arguments under this heading into

subsequent arguments. Therefore, I will not consider the issues raised under this point in isolation

for lack of sufficient briefing.

> b.  <u>There is no apparent conflict between the vocational expert's testimony and the DOT.</u>

The burden shifts to the Commissioner at step five to show that sufficient jobs exist in the

national economy for a hypothetical person with the claimant's impairments, age, education, and

work experience. *See Jensen v. Barnhart,* 436 F.3d 1163, 1168 (10th Cir. 2005). The

Commissioner must meet this burden with substantial evidence. *Thompson v. Sullivan*, 987 F.2d

1482, 1487 (10th Cir. 1993). An ALJ may rely on a vocational expert's testimony to show

substantial evidence. *Biestek*, 139 S. Ct. at 1157. The hypothetical posed to the vocational expert "must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record. *Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1237 (D.N.M. 2017) (citing *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010)). The vocational expert's response to a hypothetical reflecting all impairments meets the substantial evidence standard for the ALJ's disability decision. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000)).

However, an ALJ is required to "investigate and elicit a reasonable response for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of non-disability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). Similarly, SSR 004p requires:

> before relying on [vocational expert] ... evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] ... and information in the Dictionary of Occupational Titles (DOT) ... and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

*Leo*, 2020 WL 888600, at *8 (quoting SSR 004p, 2000 WL 1898704, at *1 (Dec. 4, 2000)). Further, if an "apparent unresolved conflict" does exist between the vocational expert evidence and the DOT, the ALJ must obtain a reasonable explanation for the conflict before relying on the vocational expert's testimony to support a decision regarding disability. *Id.*

I find that there is no apparent conflict between the vocational expert's testimony and the DOT. During the hearing the ALJ first posed the following hypothetical to the vocational expert:

> This person can do a full range of medium work . . . except as follows, due to mental impairments this person is capable of only doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember and carry out simple instructions. This person can maintain concentration and persist for two-hour periods during the workday with

normally scheduled work breaks between periods. This person can relate to supervisors and co-workers on a superficial and work-related basis and can adapt to a work situation. This person should not work at jobs where changes in a work routine occur on a regular basis or where changes in routine . . . are regularly made under circumstances where there is usually little or no opportunity to adjust." And this person can have no contact with the general public, meaning interaction with the general public is not part of the job duties and the contact, in most cases, would be incidental and superficial.

[Doc. 18-1] at 78-79. The vocational expert responded that "an occupation that does meet your hypothetical for medium/unskilled work with those limitations" would be a dishwasher [DOT 318.687-101][7], a hand packager [DOT 920.587-018][8], and a laundry worker [DOT 361.684-014][9]. *Id.* at 79-81.

I find that the ALJ properly included all of Plaintiff's limitations in the RFC. The ALJ found that Plaintiff had moderate limitations in the four mental impairment categories: (1)

---

[7] The corresponding DOT job title to this code is "kitchen helper" with the following description: "Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food." Dictionary of Occupational Titles, Dep't of Labor, 4th Ed., Rev. 1991, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A. Requires "*GOE: 05.12.18 STRENGTH: M GED: R2 M1 L1 SVP: 2 DLU: 86.*" *Id.*

[8] The DOT describes hand packager generally as follows: "Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged." *Id.* Requires "*GOE: 06.04.38 STRENGTH: M GED: R2 M1 L1 SVP: 2 DLU: 88.*" *Id.*

[9] The DOT describes "laundry worker" as follows: "Washes and irons wearing apparel, sheets, blankets, and other linens and clothes used by employees of logging, construction, mining, or other camp, or washes uniforms, aprons, and towels in establishments supplying employees with these linens. Uses equipment usually found in household or in small laundry." *Id.* Requires "*GOE: 05.12.18 STRENGTH: M GED: R2 M1 L1 SVP: 2 DLU: 77.*" *Id.*

understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* at 18-19.

The ALJ incorporated these mental limitations into the RFC as follows. *Id.* at 19-20. In the first category, the RFC included that Plaintiff is capable of simple and routine tasks that only require Plaintiff to understand, remember and carry out simple instructions. *Id.* at 19. In the second category, the RFC included that Plaintiff can only superficially relate to supervisors and coworkers on a work-related basis but have no contact with the general public (meaning incidental and superficial contact at most). *Id.* at 20. In the third category, the RFC included that Plaintiff can only maintain concentration and persist for two-hour periods during the workday with regularly scheduled breaks between those two-hour periods. *Id.* at 19-20. In the fourth category, the RFC included that Plaintiff should not work at jobs where the work routine regularly changes, or where routine changes regularly happen with little or no warning or opportunity to adjust. *Id.* at 20.

I therefore find that the ALJ properly incorporated the RFC, including all aforementioned mental limitations, into the above hypothetical. The vocational expert considered all Plaintiff's mental limitations in responding to the hypothetical by opining that he could work as a dishwasher, a hand packager, and a laundry worker. Plaintiff does not allege that the ALJ's hypothetical failed to include all specific limitations such that the vocational expert's response was fundamentally flawed, nor did Plaintiff provide his own hypothetical. Thus, the ALJ "propounded a hypothetical question to the [vocational expert] that included all the limitations the ALJ ultimately included in her RFC assessment." *See Rivera*, 242 F. Supp. 3d at 1237. For that reason, the expert's answer provided a proper basis for the ALJ to find Plaintiff not disabled. *See id.*

Plaintiff does not identify an apparent inconsistency or conflict between the vocational expert's testimony and DOT to support his argument. Rather Plaintiff's position hinges on the absence of language addressing mental limitations in the DOT definitions of a dishwasher, hand packager, and laundry sorter. [Doc. 28] at 6, 7. Plaintiff relies on the unsupported, conclusory statement that "the custom is usually for the vocational expert to explain that the additional limitations would still be included in the jobs proffered" based on the vocational expert's experience. *Id.* at 6. Plaintiff also cites a non-binding case where the court found a conflict in the DOT's silence on a sit/stand limitation because the ALJ treated the vocational expert's testimony as trumping the DOT and thus unreservedly accepted the vocational expert's testimony. *Id.* Critically, Plaintiff does direct me to any binding authority on this point. However, in *Rivera,* the court rejected a similar argument, stating that "none of these positions [identified by the vocational expert] explicitly require handling and fingering *bilaterally*" in the DOT. 242 F. Supp. 3d at 1237, 1242 (noting that the DOT lists maximum occupation requirements as generally performed). Similarly, the DOT job descriptions of dishwasher (kitchen helper), hand packager, and laundry sorter do not require exceeding any of the mental limitations in the RFC. In sum, I do not find Plaintiff's argument in this regard persuasive and decline to find harmful error to remand.

I note that Plaintiff appears to conflate the vocational expert's response to the ALJ's second hypothetical, which was not adopted, with the first hypothetical. *See* [Doc. 18-1] at 81. In the second hypothetical, the ALJ restricted the mental limitations to render the Plaintiff "unable to adequately relate to co-workers and supervisors or can [sic] complete a normal workday and work week. . . without interruptions" from psychotic symptoms. *Id.* Further, under this hypo, Plaintiff

15

would be unable to "perform on a consistent pace" without unreasonable rest periods, absences, or other accommodations. *Id.*

Under this second hypothetical with more severe mental limitations than those in the RFC, the vocational expert opined that there would be no jobs because "those mental limitations . . . are based on my experience since they're just outside the scope of the [DOT]." *Id.* at 82. The ALJ followed up, asking "[n]ot inconsistent, just outside the scope, is that correct?" *Id.* The vocational expert confirmed "yes, that's correct." *Id.* The ALJ next queried that "with respect to the *rest of your testimony*, there's no part of the *rest of your testimony* that's either inconsistent and in conflict or outside the scope?" *Id* (emphasis added)*.* The vocational expert responded "[c]orrect, just the limitations." *Id.* The ALJ asked Plaintiff's counsel if she had any questions at that point. *Id.* She did not. *Id*

When examined in context, it becomes clear that the mental limitations "outside the scope" of the DOT refer to severe mental limitations posed in the second hypothetical which the ALJ did not adopt in the RFC. It is also clear that when the ALJ refers to the "rest of your testimony," he means testimony not related to this second hypothetical. Thus, the vocational expert confirmed that her testimony regarding the first hypothetical incorporating the RFC was not inconsistent, not in conflict, nor outside the scope. Thus, I find Plaintiff's argument assigning error to the vocational expert's use of the term "outside the scope" unpersuasive.

    c.  <u>The DOT descriptions of the jobs the vocational expert identified are compatible with the social limitations in the ALJ's hypothetical to the vocational expert.</u>

Plaintiff makes several arguments under this heading which I will address in turn. First, Plaintiff alleges that the vocational expert identifying "dishwasher" under DOT code 318.687-101

is an inconsistency because "there is no occupation in the DOT with such a title." [Doc. 28] at 9. Rather, that DOT code corresponds to the job title "kitchen helper." *Id.*

However, as Defendant points out, the DOT's "kitchen helper" definition includes dishwashing, which entails washing pots, pans, and dishes by hand and placing them in drying racks or into a dishwashing machine. [Doc. 32] at 9-10 (citing *Benavidez v. Kijakazi*, No. 20-990 SCY, 2021 WL 6062715 (Dec. 22, 2021, D.N.M)). *Benavidez* rejected the same alleged inconsistency between the vocational expert naming "dishwasher" instead of the proper DOT title "kitchen helper." *See Benavidez*, 2021 WL 606271, at *5. It noted the plaintiff's lack of authority requiring the vocational expert to "recite the exact job titles when testifying" and the Tenth Circuit's affirmance of vocational expert testimony and DOT titles differing to some degree. *Id.* So long as the vocational expert's testimony allows a court to meaningfully review the ALJ's decision, *Benavidez* found that "a slight difference" in job titles is not a basis for remand. *Id.*

The situation here is analogous to *Benavidez*. Plaintiff cites no authority other than a "Google search" of the DOT number which revealed the corresponding DOT title of "kitchen helper," not "dishwasher" as the vocational expert testified. [Doc. 28] at 9. For the same reasons cited in *Benavidez*, I find this is a distinction without a difference. The vocational expert's testimony here allows me to meaningfully review the ALJ's decision, and thus I find to valid basis for remand on this point.

Plaintiff next argues that the kitchen helper job requiring a medium exertional ability and a level 2 reading ability, a level 1 math ability, and a level two language ability is somehow inconsistent with mental limitations in the ALJ's hypo. *Id.* at 9, 10. Kitchen helper requires "GED: R2 M1 L1" (as do the rest of the vocational expert's jobs). *See supra*, n.8-10. This refers to the

General Education Development required in reasoning, math, and language. *See* Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991), Dep't of Labor.[10] Level two reasoning requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Level one math requires adding and subtracting two-digit numbers, multiplying and dividing 10's and 100's by 2, 3, 4, and 5, and performing basic arithmetic operations with coins as part of a dollar and with units such as cup and pint, foot and yard, and ounce and pound. *Id.* Level one language requires reading in terms of recognizing the meaning of 2,500 words, reading up to 120 words per minute, writing in terms of printing simple sentences, and speaking in terms of using simple sentences in normal word order with present and past tenses. *Id.*

Plaintiff fails to explain how these levels are inconsistent with Plaintiff's mental limitations or provide any supporting authority. I do not find any inconsistencies. These low thresholds for reasoning, language, and math reasonably account for Plaintiff's moderate mental limitations incorporated into the RFC and first hypothetical. Thus, I find no basis for remand in this argument.

Finally, Plaintiff argues only a portion of the 148,000 jobs the vocational expert found available to Plaintiff in the national economy would fit within the framework of the ALJ's hypothetical. [Doc. 28] at 11. Plaintiff urges that the fraction of jobs compliant with the hypothetical would likely not exist in sufficient numbers in the national economy. For example, Plaintiff opines that the hand packager job may be inconsistent with the hypothetical because in

---

[10] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

"mail order businesses such as Amazon" Plaintiff may be exposed to "substantial interaction with supervisors and coworkers; and changes in routine caused by a myriad of market changes might impact some of the alleged 177,000 jobs." *Id.* at 12. Plaintiff provides no authority for these assertions other than a conclusory string citation of cases where I have previously found that sufficient jobs do not exist in the national economy under distinguishable circumstances. *Id.* at 11. Plaintiff also cites *Trimiar v. Sullivan*, which does not stand for the proposition Plaintiff proposes. *See Trimiar*, 966 F.2d 1326 (10th Cir. 1992). Therefore, I find that Plaintiff's speculative argument is not a basis for remand.

**VIII.**   **CONCLUSION AND RECOMMENDATION**

For these reasons, I **RECOMMEND** that the Court **DENY** Plaintiff Johnny Luces' Motion to Reverse and Remand, [Doc. 27] and **AFFIRM** the Commissioner's Final Decision in this case.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE**
of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**